UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CITY OF HOUGHTON, a Michigan municipal corporation,

      Plaintiff,

V

WAL-MART REAL ESTATE BUSINESS TRUST, a Delaware Statutory Trust,

      Defendant.

Case No.

Hon.

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

## **COMPLAINT**

**NOW COMES** the Plaintiff, City of Houghton, through its attorneys, Foster Swift Collins & Smith PC and for its Complaint against Wal-Mar Real Estate Business Trust, states as follows:

1.     This is a breach of contract claim arising out of the attached "Development Agreement" entered between Plaintiff, the City of Houghton and the Defendant, Wal-Mart Real Estate Business Trust.  **(Exhibit 1 – the "Development Agreement")**

2.     The City of Houghton is a Michigan municipal corporation located at 616 Sheldon Avenue, Houghton, Michigan 49931 ("Houghton").

3.     Wal-Mart Real Estate Business Trust is a Delaware Statutory Trust located at 702 S.W. Eighth Street, Bentonville, Arkansas 72716 ("Wal-Mart").

4.     The Development Agreement provides that any dispute with respect to the rights and duties of the parties arising and relating to the Development Agreement shall be litigated in the U.S. District Court for the State of Michigan.

5.     The amount in controversy in this case exceeds $75,000.00.

6.      This court has jurisdiction to hear this case under 28 USC §1332 because the amount in controversy exceeds $75,000.00 and Houghton is a citizen of the State of Michigan and Wal-Mart is a citizen of the State of Delaware.

7.      In addition, Houghton seeks declaratory relief from this Court in accordance with 28 USC § 2201.

## GENERAL ALLEGATIONS

8.      The facts and circumstances giving rise to this lawsuit involve the Development Agreement entered between the parties in which Houghton agreed to transfer certain real property to Wal-Mart and further authorized Wal-Mart to expand its existing Wal-Mart store operating at 995 Razorback Drive, Houghton, Michigan 49931[1] (the "Property") into a Wal-Mart Supercenter store and gas station (the "Project"), in exchange for certain consideration provided by Wal-Mart to Houghton including, but not limited to, Wal-Mart's agreement to an increased market value of the Property totaling $3,900,000 relating to new construction expanding the existing Wal-Mart building (the "Addition"), the consequent increase to the Properties tax base, and an increase in the assessed taxable value of the Property and any other property transferred to Wal-Mart for the Project by $1,950,000 from the then existing taxable value of the Property.

9.      The agreed increase in the value of the Property due to the $3,900,000 Addition was based on standard methods of valuing operating large format big box stores.

10.     The increase in the tax base and the assessed taxable value of the Property provided Houghton with the financial ability to, amongst other things: (1) maintain municipal services for

---

[1] The real property involved is legally described in Exhibit A & B attached to the Development Agreement.

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

the Wal-Mart Superstore and ensuing development in the area; (2) provide current and future infrastructure improvements for the Wal-Mart Superstore and the development surrounding the store over the life of Wal-Mart's operations in Houghton; and (3) provide long term environmental monitoring of wetlands and drain systems relating to Wal-Mart's relocation of Huron Creek and associated storm appurtenances ("Wetland Mitigation Work") critical to the development of the Wal-Mart Superstore and surrounding area pursuant to a "Permit"[2] issued by the State of Michigan.  **(Exhibit 1, ¶ 1)**

11.    By way of example, as a result of the Wetland Mitigation Work provided by Wal-Mart, Houghton agreed to provide and pay for the long-term maintenance and monitoring of the regulated wetlands in accordance with applicable federal, state and local laws, including but not limited to the Permit.  **(Exhibit 1, ¶ 7)**

12.    Houghton agreed to maintain and monitor the regulated wetlands after the Wetland Mitigation Work and Project was completed ("Wetland Monitoring") in exchange for Wal-Mart's agreement to increase the market value of the Property by the amount of the Addition totaling $3,900,000 which increased the tax base and the assessed taxable value of the Property by an additional $1,950,000 into perpetuity which increased assessment would thereafter be added to the annual current assessed taxable value of the Property each year thereafter and run "with the land." **(Exhibit 1, ¶ 3 and ¶ 13)**

---

[2] The terms "Wetland Mitigation Work" and "Permit" are defined in ¶ 1 of the Development Agreement and is in reference to MDEQ Permit No. 03-31-0011-P.

13.     The formation of and outline for the Development Agreement began when Wal-Mart's counsel submitted an October 29, 2003 Letter of Intent to Houghton's City Administrator outlining the basic terms of the proposed Development Agreement .  **(Exhibit 2 - LOI)**

14.     ¶ 1 of the LOI provides that in conjunction with the expansion of the Property, referred to as the "Project" in the LOI, Wal-Mart will agree to perform certain public improvements in the City of Houghton.

15.     ¶ 2 of the LOI provides for an agreement involving a minimum property tax assessment for the Property upon completion of the Project and states:

> "Upon completion of the Project, Wal-Mart will agree to an increase in the minimum assessed value on the overall Wal-Mart property of $1,950,000".

16.     ¶ 3 of the LOI provides for tax increment funds being provided by Houghton to Wal-Mart and states:

> "The City will agree to provide Wal-Mart with $300,000 (Three Hundred Thousand Dollars) of tax increment financing (to be drawn by Wal-Mart concurrently with the completion of the Public Improvements)."

17.     ¶ 4 of the LOI provides that Houghton will agree to purchase approximately 49 acres identified as the "Schutz Property" which would be annexed into Houghton to be used in part for the development of the Property.

18.     ¶ 5 of the LOI provides that Houghton will agree to accept from Wal-Mart (or such other third parties that own property) the dedication of proposed roadways if completed to Houghton's standards and to vacate all public right of ways which will not lie within the proposed public right of ways as set forth on the site plan.

19.     After entering the LOI, the parties subsequently drafted and entered the Development Agreement.

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

20.    In ¶ 3 of the Development Agreement, Wal-Mart agreed that after the Project was complete (referred to as the "Work" in the Development Agreement), the parties agreed to increase the assessed taxable value of the Property by no less than One Million Nine Hundred Fifty Thousand Dollars ($1,950,000).

21.    After the Development Agreement was executed by the parties, the Project commenced in 2004.

22.    The state equalized value ("SEV") for the Property in 2004 when the Project commenced was $2,250,000 and its taxable value was $2,232,295.

23.    The Project was completed in 2005 at which time the SEV for the Property was $2,250,000 and its taxable value was $2,250,000.

24.    After completion of the Project in 2005, the Property's SEV increased to $4,475,517 and its taxable value increased to $4,475,517 as a result of the improvements to the Property and Wal-Mart's agreement in the Development Agreement to increase the then current assessed  taxable value of the Property by no less than $1,950,000.

25.    The parties intended that the $1,950,000 increase in the Property assessed taxable value would be added to the then current assessed taxable value of the Property creating a larger taxable value for the assessment of property taxes on the Property going forward.

26.    In accordance with ¶ 13 of the Development Agreement, the $1,950,000 increase in the assessed taxable value on the Property would run into perpetuity and was a covenant running with the land.

27.    ¶ 14 of the Development Agreement states:

"No modification of this Agreement shall be valid or binding unless such modification is in writing, duly dated and signed by both parties."

—FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS—

28.     ¶ 15 of the Development Agreement states:

"Each party specifically agrees that it enters into this Agreement based on its own understanding of the terms hereof and does not rely, in whole or in part, on any interpretation or representation of the other party.  Each party agrees that this Agreement is the result of good faith arm's length negotiations."

29.     Since the Project was completed in 2005 and until 2018, Wal-Mart continued to operate the Wal-Mart Supercenter in Houghton, abide by the terms of the Development Agreement in respect to the increased assessed taxable value for the Property, and has paid property taxes on the Property in accordance with the SEV and increased assessed taxable values set forth on the spreadsheet attached hereto as **Exhibit 3**.

30.     In 2018, Wal-Mart filed a Petition with the Michigan Tax Tribunal, MOAHR Docket No. 18-002195 (the "Petition") requesting that the assessed taxable value for the Property be reduced to the amount set forth in the spreadsheet attached hereto as **Exhibit 4**.

31.     Wal-Mart has amended its Petition each year since 2018 asking that the assessed taxable value for the Property be reduced to the amount set forth on **Exhibit 4.**

32.     Wal-Mart's Petition is an attempt to void or modify its prior agreement to increase of the assessed taxable value of the property by the $1,950,000 as agreed to by Wal-Mart in the the Development Agreement.

33.     Walmart's new method of valuing the Property uses a method of valuation which fundamentally opposes the agreed upon method for valuing the Property with the Addition that was negotiated by the parties in the Development Agreement to determine the value of the Addition and uses instead a method of valuation that relies on using sales of vacant and abandoned large format big box stores that were "impaired" by the retailer and were prohibited from using

the store as a big box store.  Wal-Mart's current valuation method the value of the Addition nearly worthless.

34.    Wal-Mart's attempt to reduce the assessed taxable value of the Property is an attempt to rescind or modify the Development Agreement in breach of the Development Agreement's terms.

## COUNT I – BREACH OF CONTRACT

35.    Plaintiff incorporates by reference herein each and every prior allegation previously set forth in this Complaint.

36.    In accordance with the terms of the Development Agreement, Wal-Mart agreed to increase the current assessed taxable value of the Property by $1,950,000 into perpetuity.

37.    The parties agreed that the terms in the Development Agreement and the $1,950,000 increase in the Property's assessed taxable value was a "covenant running of the land." **(Exhibit 1, ¶ 13)**

38.    The parties agreed that the terms in the Development Agreement were the result of good faith arm's length negotiations, that the Development Agreement would not be modified without the written consent of both parties and that the Development Agreement would be binding upon the parties' heirs, successors, administrators, executors and assigns.  **(Exhibit 1, ¶ 15)**

39.    Wal-Mart's Petition to reduce the assessed taxable value of the Property for the years 2018, 2019, 2020 and 2021 is a breach of the terms of the Development Agreement by Wal-Mart because if Wal-Mart succeeds on its Petition, substantially all of the $1,950,000 increase in the assessed taxable value of the Property will be negated.

40.    Wal-Mart's breach of the Development Agreement and its request to reduce the assessed taxable value of the Property to an amount eliminating all or substantially all of the

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

$1,950,000 increase in the Property's assessed taxable value will result in damages to Houghton by reducing the amount of property taxes Houghton will receive from Wal-Mart.

41.     The damages Houghton will incur if Wal-Mart breaches the terms of the Development Agreement and the terms therein are not enforced will include but are not limited to:

    a.     An annual loss of tax revenue to Houghton paid by Wal-Mart totaling approximately $58,321 per year which amount may be more or less annually because the amount is contingent on the annual reduction of the assessed taxable value being requested by Wal-Mart in its Petition despite Wal-Mart's agreement to increase in the assessed taxable value by $1,950,000;

    b.     Loss of tax revenue sufficient to pay for continued public safety services and police personnel serving the community and the Wal-Mart development and as a result, potential lay-offs of Houghton police officers;

    c.     Loss of tax revenues sufficient to pay for Houghton's ongoing obligations for the Wetland Monitoring under the Permit relating to Wal-Marts development of the Wal-Mart Superstore per the terms of the Development agreement;

    d.     Reallocation of Houghton's budgeted tax revenues for required services because of the reduction of the Property's assessed taxable value as requested by Wal-Mart in its Petition which will result in less public services for the community; and

    e.     Loss of tax revenue to the local schools and the County.

42.     The total loss and damages to Houghton to date if Wal-Mart succeeds on its Petition to reassess the taxable value of the Property for tax years 2018 to 2021 will total at a minimum $291,605 (5 years times $58,321).

43.     As a result of Wal-Mart's breach of the Development Agreement, Houghton's damages total at a minimum $291,605.

44.     If Wal-Mart is successful on its amended Petition to reduce the assessed taxable value of the Property for 2018 and each year thereafter, Houghton will have substantially less tax funds available to it to provide and maintain its public safety services; its police force; public

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

property and infrastructure used as part of the Wal-Mart development; the roads and utilities serving the Property; and the Wetland Monitoring required by the state of Michigan and Permit pursuant to the terms of the Development Agreement, which are required for the Wal-Mart Supercenter operations.

**WHEREFORE** it is requested that this Court enter a judgment against Wal-Mart for its breach of the Development Agreement arising from Wal-Mart's request to reduce the assessed taxable value of the Property which will result in a reduction of Wal-Mart's property taxes for the Property; award Houghton damages in excess of $75,000.00 arising from Wal-Mart's breach of the Development Agreement; and award any other relief the Court finds just and equitable.

### COUNT II – DECLARATORY RELIEF

45. Plaintiff incorporates by reference herein each and every prior allegation previously set forth in this Complaint.

46. This Court has the jurisdiction and statutory authority to enter a declaratory judgment regarding the rights and legal relations between Houghton and Wal-Mart arising under the Development Agreement in accordance with 28 USC § 2201.

47. Wal-Mart's actions in filing a Petition to reduce the assessed taxable value of the Property is an act which constitutes breach of the terms of the Development Agreement because Wal-Mart seeks to reduce the assessed taxable value of the Property to an amount less than the assessed taxable value of the Property plus the $1,950,000 increase in the assessed taxable value Wal-Mart agreed to in the Development Agreement.

48. If Wal-Mart prevails on its Petition to reduce the assessed taxable value of the Property for the years 2018, 2019, 2020, 2021 and 2022, such will constitute a breach of the Development Agreement and the terms therein whereby Wal-Mart agreed that the assessed taxable

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

value of the Property would be increased "by no less than $1,950,000" and such increase was a covenant running with the land.

49.    Wal-Mart also agreed that the increase in the assessed taxable value for the Property would be binding on any of Wal-Mart's heirs, successors, administrators, executors and assigns and that the terms in the Development Agreement could not be modified without the express written agreement of Houghton.

50.    Houghton has not agreed to any modification of the Development Agreement or to Wal-Marts Petition and its request for a reduction of the assessed taxable value of the Property as stated in its Petition.

51.    Whether or not Wal-Mart's intentional act in filing the Petition and seeking a reduction of the assessed taxable value of the Property constitutes a breach of the Development Agreement is a case of actual controversy.

52.    As such, this Court can declare whether or not Wal-Mart is entitled to pursue its Petition to reduce the assessed taxable value of the Property which may effectively terminate its prior agreement in the Development Agreement to increase the Property's assessed taxable value by $1,950,000.

53.    Further, this Court can declare whether Wal-Mart's actions in seeking a reduction of the assessed taxable value of the Property is a breach of the Development Agreement which, if approved, will result in damages to Houghton.

**WHEREFORE** it is respectfully requested that this Court enter an order and judgment declaring: (1) that Wal-Mart's action in filing a Petition to reduce the assessed taxable value of the Property is a breach of the Development Agreement; (2) that Houghton will suffer damages if Wal-Mart is successful on its Petition, those damages including but are not limited to a reduction

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

of the property taxes collectible by Houghton on the Property in an amount in excess of $75,000; (3) that if Wal-Mart is successful on its Petition, the result will constitute an unenforceable modification of the Development Agreement which is intended to run with the land; (4) enter an order barring and enjoining Wal-Mart from pursuing its Petition to reduce the assessed taxable value of the Property; and (5) grant any other relief to Houghton the Court finds just and equitable.

Respectfully submitted,

FOSTER, SWIFT, COLLINS & SMITH, P.C.

Dated: August 3, 2022     By:

Andrew C. Vredenburg (P45359)
Foster Swift Collins & Smith, P.C.
Attorneys for Plaintiffs
1700 East Beltline NE, Suite 200
Grand Rapids, MI 49525
(616) 726-2234
avredenburg@fosterswift.com

83639:00007:6404386-1

11